## Case No. 736.

### BAILEY v. HANNIBAL & ST. J. R. CO.

[1 Dill. 174.] [1]

Circuit Court, D. Missouri.  1870. [2]

RAILROAD COMPANIES — CONSTRUCTION OF PREFERRED STOCK CERTIFICATE, ETC.

Preferred stock certificates issued by the railroad company, construed, and held to give the holders thereof a preferable right to the first seven per cent of the net earnings each year; after which the holders of common stock are entitled to next seven per cent, and if any surplus it is to go to holders of the preferred and common stock equally.

[See note at end of case.]

[In equity.  Bill by John Bailey against the Hannibal & St. Joseph Railroad Company to restrain respondent from paying certain moneys as a dividend on its common stock. Bill dismissed. This decree was affirmed on appeal in 17 Wall. (84 U. S.) 96.  See note at end of case.]

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[2] [Affirmed by supreme court in Bailey v. Hannibal & St. J. R. Co., 17 Wall. (84 U. S.) 96.]

The complainant is the owner of 800 shares of the preferred stock issued by the defendant. The only question in the case is as to the extent of the respective rights of the preferred and common stock to dividends.

The certificates for the preferred stock recite that they are "issued in adjustment of the bonds of the company bearing date," etc., "and subject to the terms and conditions of an indenture between the said corporation, and Wm. Swift and others, trustees, dated April 1, 1863, and with the rights therein set forth, and certifies that the holder is entitled to ——— shares of the preferred stock of the said corporation, and shall be entitled to receive all the net earnings of said company, which may be divided pursuant to said indenture, in each year up to $7 per share, and to share in any surplus beyond $7 per share, which may be divided upon the common stock." In the indenture of April 1, 1863, is an agreement "that said preferred stock shall be entitled to a dividend of 7 per cent from the net earnings of said road, in each year, before any dividend shall be declared upon other unpreferred shares of the said corporation, and to an equal dividend with said other shares, in the net earnings of said corporation beyond said seven per cent."

The history of the issue of this preferred stock is briefly this: The war and other causes had in 1862 greatly embarrassed the company, and on the 15th day of October of that year the directors adopted a "plan" to extricate the company from its difficulties, which was set forth at length in a circular to the owners of bonds under the different mortgages. This project contemplated a relinquishment by them of a certain amount of their bonds, and the taking in the place thereof preferred stock. The character of the preferred stock to be taken is thus described in the plan: "The preferred stock to be 7 per cent and not cumulative, but to share with the common stock any surplus which may be earned over and above 7 per cent upon both, in any one year." It was this plan, without modification, to which the bondholders consented, and they signed an instrument to that effect, agreeing to surrender bonds "in accordance with the provisions of the plan of October 15, 1862, hereunto annexed," and to receive preferred stock therefor. The assent of all the bondholders having been obtained to this plan by the latter part of February, 1863, the aforementioned indenture of April 1, 1863, was drafted; and the evidence (the competency of which is objected to by the complainant) establishes that the purpose was to carry out and not to change the provisions of this plan. Indeed there was no authority in the committee having the matter in charge to change it. On the 30th day of May, 1863, pursuant to notice, a meeting of the stockholders of the company ratified what had been done and consented to and adopted the indenture of April 1, 1863, a printed copy of which was submitted to it, and certificates of preferred stock, in the form above mentioned, were from time to time issued to the bondholders by the company. No dividends were made prior to the year 1870. On the 29th day of June, of that year, a 7 per cent dividend was voted to the holders of the preferred stock, and 3½ per cent dividend was voted to the common stock out of the earnings of the first six months of 1870, and it was also voted that the earnings of the road for the remaining six months be applied to pay the further dividend of 3½ per cent on said common stock. To the carrying out of this vote in favor of the common stock the complainant objects, and files this bill for an injunction and relief.

Glover & Shepley, for complainant.

Thomas T. Gantt and James Carr, for railroad company.

Before DILLON, Circuit Judge, and TREAT and KREKEL, District Judges.

DILLON, Circuit Judge. It is admitted on both sides that the holders of the preferred stock are entitled to receive all the net earnings in each year, up to 7 per cent. The dispute relates to the net earnings over 7 per cent. The defendant claims that when the preferred stock has in any one year received its seven dollars per share, the common stock is entitled to receive seven dollars per share if so much shall have been earned, and that if there be any surplus beyond this, the two kinds of stock shall share it equally. For example: if the net earnings for a year shall be just 12 per cent, the preferred stock first gets its 7, and the common stock the remaining 5 per cent; if the earnings shall be 16 per cent, the preferred and common stock will each get its 7, and then share equally in the other 2 per cent.

On the other hand, the complainant claims that the preferred stock is first entitled to 7 per cent, and that it and the common stock share equally in any surplus beyond the 7 per cent, admitted to be first due to the preferred stock. For example: if the net earnings in any one year are 12 per cent, the complainant insists that the preferred stock is first to get its 7 (and this is admitted), and then to get one-half of the remaining 5 per cent, and the common stock the other half. This is controverted by the defendant, who insists as above stated, that the common stock is in such a case entitled to the whole of the 5 per cent. Both parties maintain that their positions are warranted by the language of the stock certificates. And the complainant insists that if there is any doubt upon the face of the certificate of the stock, it is removed by the language of the indenture of April 1, 1863, which it recites, and to which by its terms it is subject. On the other hand, the respondent contends that such is not the true construction of the indenture, especially when taken as it should

be, in connection with the certificate, and that this is indubitably shown by the history of the issue of the preferred stock, and the aliunde testimony mentioned in the statement of the case. The complainant stands upon the stock certificate and indenture, and objects that all testimony outside of these is inadmissible to vary their construction or to affect his rights. The competency, in this proceeding, of the testimony aliunde it is not necessary to discuss, for after a careful consideration of the language of the stock certificate the court is of opinion that it does not support the claim of the complainant, but does sustain that of the respondent. The "surplus" mentioned in the certificate refers to what may remain after the preferred and the common stock has each had its $7 per share. If the intention had been as claimed by the complainant, all the language after the word "surplus," would be unnecessary; and the construction put upon it by the company is the only one which will give effect to all the language employed. The use in the indenture of the word "said," in the phrase "said 7 per cent," is a clerical error, and construing the certificate and indenture together, it should not have the effect to change the rights of the holders of the common stock.

We will not say that the language used does not raise a difficulty, but we think the result we have reached fairly warranted by the stock certificate and indenture, and we know (if it be proper to consider the extraneous evidence) that it is the one which was contemplated by all parties to the arrangement under which the preferred stock was issued.

The injunction will be dissolved and the bill dismissed.

TREAT and KREKEL, District Judges, concurred.

Ordered accordingly.

[NOTE. In affirming this decree, the supreme court, by Mr. Justice Clifford, held that seasonable objection that the indenture is the only evidence of the contract between the parties could not have availed the complainant if it had been made, "as it is well-settled law that several writings executed between the same parties substantially at the same time, and relating to the same subject-matter, may be read together as forming parts of one transaction; nor is it necessary that the instruments should in terms refer to each other, if in point of fact they are parts of a single transaction. * * * Until it appears that the several writings are parts of a single transaction, either from the writings themselves, or by extrinsic evidence, the case is not brought within the rule, as it may be that the same parties may have had more than one transaction in one day of the same general nature. Doubt upon that subject, however, cannot arise in this case, as the due relation of the several writings to each other is conceded by both parties." Continuing, the court said: "Standing alone, it may be admitted that the indenture furnishes some support to the views of the complainant, but it is clear that all ambiguity disappears when it is read in connection with the writings which preceded and followed it in respect to the same subject-matter. Ample justification for that remark is found in the plan which preceded it, and which was approved and signed by all the bondholders, and in the form prepared for the certificate of the preferred stock, which was adopted subsequently to the execution of the indenture, and which was accepted by all the holders of the preferred stock as a complete fulfillment of the arrangement between them and the company. Holders of preferred stock, as there provided, are entitled to receive all the net earnings of the company, which may be divided pursuant to the indenture in each year up to $7 per share, and to share in any surplus beyond $7 per share which may be divided upon the common stock, which, in substance and legal effect, is the same regulation as that contained in the circular or plan, and all the other writings upon the subject which were given in evidence at the final hearing." Bailey v. Hannibal & St. J. R. Co., 17 Wall. (84 U. S.) 96.]